IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES W. COVERT | ) | No. C 06-6626 SBA (PR) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANTS'** |
| v. | ) | **MOTION TO DISMISS** |
| | ) | |
| D. GRAHAM, et al., | ) | (Docket no. 26) |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff James W. Covert, a state prisoner currently incarcerated at Pleasant Valley State Prison in Coalinga, California, filed this pro se civil rights action under 42 U.S.C. § 1983 alleging that prison officials were deliberately indifferent to his health and safety during his incarceration in administrative segregation ("ad seg") at San Quentin State Prison (SQSP). Plaintiff alleges, inter alia, that in January 2005, Defendants purposely deprived him of his personal shoes, instead provided him with size 12 shoes when he wore a size 9 ½. He complained to prison officials about the wrong shoe size for months, to no avail. On April 16, 2005, Plaintiff sustained serious injuries after one of his shoes slipped off, causing him to fall down several flights of stairs. On September 1, 2009, the Court issued an order serving Plaintiff's cognizable claim of deliberate indifference to his health and safety against Defendants Harrison and Graham.

Before the Court is Defendants' motion to dismiss Plaintiff's complaint for failure to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). Plaintiff has filed an opposition, and Defendants have filed a reply.

For the reasons discussed below, the Court GRANTS Defendants' motion to dismiss.

## BACKGROUND

### I.   Factual Summary

The following facts are taken from Plaintiff's verified complaint as well as from declarations of CDCR Chief of the Inmate Appeals Branch, N. Grannis, and Defendants' attorney, C. Young.

In January, 2005, Plaintiff was given size 12 shoes, when his actually wore a size 9 ½.  (Am. Compl. at 8.)   Despite numerous complaints "to tier officers, Sergeant R. Harrison and Lieutenant D. Graham, that his shoes were too big," Plaintiff never received his correct shoe size (Id.)  In response to his complaints, Plaintiff alleges that Defendant Graham told him, "We have a show crisis going on."  (Id.)

On April 16, 2005, plaintiff suffered injuries, ostensibly because of being provided the wrong size shoes.  On that date, Plaintiff was walking down a stairway, when his right shoe slipped off. He stepped on the shoe, twisted his ankle and fell down the stairs.  Plaintiff claims that the "Officers provided no assistance to [him] down the five flights of stairs, despite the fact that Plaintiff was handcuffed behind his back and the stairs were usually wet, slimy, and dirty."  (Id.at 9.)  Plaintiff claims that he was "knocked unconscious by the fall, and when he came to, [he] was in severe agony."  (Id.)  Plaintiff alleges that he suffered from impaired vision and that "he was bleeding from many lacerations."  (Id.)

After falling, Plaintiff was then "forced up onto his feet by two officers" because he "could not get up on his own."  Instead of bringing a stretcher to carry him, Plaintiff claims he was "forced to limp along down the stairs to the infirmary while the two officers half dragged him by the arms." (Id.)  Plaintiff claims that he "complained all the way that this was too painful and asked the officers that they please get the stretcher, but they refused, repeatedly saying 'Come on, you can make it.'" (Id.)  Finally, Plaintiff claims; "Instead of obeying the orders and instructions of medical doctors to house plaintiff on the first tier, the defendants dragged appellant back up to his cell on the fifth tier." (Id.)  Plaintiff claims that "as a result of this incident" he now suffers from "permanent damage to his neck, back, right shoulder and vision" and "lives in constant pain."  (Id.)

Plaintiff alleges that Defendants' failure to provide him with his correct shoe size prior to his fall amounted to deliberate indifference to his health and safety.

## II.   Administrative Appeals

Plaintiff initiated two California Department of Corrections and Rehabilitation (CDCR) 602

2

inmate appeal forms relating to this claim: SQ-05-814 and SQ-05-1563.

###### A.   602 Inmate Appeal Form SQ-05-814

On April 4, 2005, Plaintiff submitted 602 inmate appeal form SQ-05-814 for informal review, which was received by SQSP staff on April 9, 2005. (Decl. Young, Ex. B at 11, 13.)  In this appeal, Plaintiff presented a laundry list of grievances on behalf of the prison population being housed in ad seg, also known as "the hole." (Id.)  The appeal, which he characterized as "a class action . . . about 'conditions of confinement' in 'the hole'," asserted fourteen separate grievances relating to conditions of confinement. (Id.)  The portion of the appeal ostensibly relevant to the instant case is contained in the eighth grievance which reads, "Prisoners aren't allowed their personal shoes, and are forced to wear either a size 8 or a size 12 pair of shoes." (Id., Ex. B at 13.)

On April 9, 2005, Defendant Harrison addressed each grievance listed in SQ-05-814 in writing. (Id., Ex. B at 11, 16.)  Regarding the issue of the prisoners' shoes, Defendant Harrison noted "while you are in Ad-Seg you cannot have your personal shoes." (Id., Ex. B at 16.)  On the same date, Plaintiff appealed to the first formal level of review, claiming that he was "not satisfied" with Defendant Harrison's response; however, Plaintiff made no mention of the shoe issue. (Id, Ex. B at 11.)

On May 13, 2005, Defendant Graham partially granted Plaintiff's first formal level appeal as to issue of the prisoners' shoes. (Id., Ex. B at 7-10, 12.)  In an effort to address Plaintiff's various grievances, Defendant Graham interviewed him prior to making a decision. (Id., Ex B at 7.)  Defendant Graham responded to the issue of the prisoners' shoes, as follows:

> In his inmate appeal, inmate Covert stated prisoners aren't allowed their personal shoes and are forced to wear either a size 8 or a size 12 pair of shoes.  I explain[ed] to Covert, for security reasons, inmates housed in Ad/Seg are not allowed to have their personal shoes.  I told Covert his personal shoes would be held in his "hot" property and they would be returned to him upon his release from Ad/Seg.  I informed Covert staff make every attempt to get the correct size soft sole shoes for inmates when they arrive in Ad/Seg.  If the correct size cannot be found, then a substitute size is issued that the inmate is able to wear.  Inmate Covert said during the interview he now has the correct size shoe and this is now [sic] longer an issue in his appeal.

(Id., Ex. B at 9.)

3

On June 10, 2005, Plaintiff filed for review at the second formal level.  (Id., Ex B. at 12, 14-15.)  Plaintiff noted:

> This is a serious health & safety issue that needs to be resolved, as I, personally, because of shoes 3 sizes too big, fell down the stairs seriously injuring myself, and still have not recovered.  It took me over 3 months to finally find a prisoner that was paroling, that agreed to trade me shoes.  Unfortunately, for me, the damage has been done.  But hopefully, another prisoner can be spared the trauma, also, Sgt. Harrison states, "for security reasons, inmates housed in Ad/Seg are not allowed to wear their personal shoes."  But in another appeal, signed & dated by Sgt. Harrison on 5-20-05, he states, "Inmates can have their own shoes if there are no other shoes available."

(Id., Ex. B at 14.)

On July 11, 2005, Warden Stokes partially granted Plaintiff's second formal level of review.  (Id., Ex. B at 12, 4-6.)  Warden Stokes referenced the fact that Defendant Graham resolved the issue of the prisoners' shoes at the first formal level of review by arranging for suitable sized shoes for Plaintiff.  (Id., Ex. B at 5.)

On July 21, 2005, Plaintiff then appealed to the Director's level of review.  (Decl. Grannis at 3.)  There, Plaintiff asserted general dissatisfaction with the conditions of confinement "but he state[d] that the new razors and a change in the allowance of personal shoes are beneficial."  (Decl. Young, Ex. B at 3.)

On October 11, 2005, N. Grannis, chief of the inmate appeals branch, denied Plaintiff's appeal at the Director's level.  (Id., Ex. B at 2-3.)  The denial focused primarily on access to the exercise yard.  (Id.)  The only mention of the issue of the prisoners' shoes was that the staff was diligent in resolving Plaintiff's appeal at the lower levels of review, and that Plaintiff was satisfied with the result.  (Id., Ex. B at 3.)

**B.**     **602 Inmate Appeal Form SQ-05-1563**

On May 6, 2005, Plaintiff submitted 602 inmate appeal form SQ-05-1563 for informal review.  (Id., Ex. C at 17.)  There, Plaintiff asserted:

> I tried for several months to get a pair of shoes that fit, to no avail.  All that was available was either a size 8, or a size 12.  I wear a size 9 ½.  Finally, on 4-16-05, my right shoe, a size 12, came off while I was walking down the stairs.  I stepped on it causing me to twist my ankle and fall down the stairs seriously injuring

4

United States District Court

For the Northern District of California

> myself.  Afterwards, the Lt. said, "there's a shoe crisis going on."  We are made to walk down the stairs for our showers with our hands handcuffed behind our backs with no assistance.  The steps are usually wet & slimy, and we have to wear shoes that are often several sizes too big.

(Id.)  Plaintiff requested that prisoners be "allowed to wear their own personal tennis shoes, until proper fitting shoes can be obtained, and, that necessary steps be taken to insure that no other Prisoner's health & safety be put in jeopardy by the dangerous conditions that currently exist."  (Id.)

On May 20, 2005, Defendant Harrison responded at the informal level by asserting that during Plaintiff's May 13, 2005 interview relating to SQ-05-814, Plaintiff indicated that he had the correct shoe size.  (Id.)  Further, Defendant Harrison noted that "[i]nmates can have their own shoes if there are no other shoes available."  (Id.)

On May 31, 2005, Plaintiff submitted SQ-05-1563 to the first formal level of review.  (Id.)  In response to Defendant Harrison's decision at the informal level, Plaintiff noted, "[i]t sounds good, but its not a policy that's adhered to, because I complained for over 3 months about my shoes being too big, to no avail."  (Id.)

On June 1, 2005, Plaintiff's request to review SQ-05-1563 at the first formal level review was screened out for failure to add any additional information.  (Id.)  In response, on June 12, 2005, Plaintiff resubmitted his request, asserting that the stairs to the showers were grimy, that prisoners were forced to walk down the stairs with their hands handcuffed behind their backs, and that those dangerous conditions still exist.  (Id., Ex. C at 19.)  Plaintiff further stated that SQ-05-1563 was designed to prevent another prisoner from falling down the stairs and being seriously injured.  (Id.)

On July 12, 2005, SQ-05-1563 was granted at the first formal level of review.  (Id., Ex. C at 18, 22-23.)  The grant occurred as a result of a memorandum issued on May 23, 2005 and providing, "all inmates arriving to Ad-Seg will have their personal shoes rapid-scanned.  If the shoes meet the criterial for authorization contained in OP 215, and no contraband is concealed in the shoes, the shoes will be returned to the inmate."  (Id., Ex. C at 22.)  The grant also indicates that Plaintiff was asked if, after the change in prison policy, he had any other concerns.  (Id.)  In response, the grant indicates that Plaintiff "requested a pair of earplugs to help him sleep due to the noise level" and that

he was provided with "two (2) pairs of earplugs."  (Id.)  Plaintiff indicates that despite the fact that his appeal was granted in full, "[he] was dissatisfied with the answer/response."  (Opp'n at 10-11.)

On August 3, 2005, Plaintiff submitted SQ-05-1563 for the Director's level review.  (Decl. Grannis at 3.)  It was screened out for failure to file at the second formal level of review.  (Id.)  There is no record of Plaintiff having submitted a 602 appeal at the second formal level of review.  (Id., Ex. A.)  Likewise, nothing in the record indicates that Plaintiff continued to pursue SQ-05-1563 after it was screened out at the Director's level.

### III.   **Procedural Background**

On October 24, 2006, Plaintiff filed this pro se civil rights action under 42 U.S.C. § 1983.  On July 30, 2009, Plaintiff filed an amended complaint alleging: (1) deliberate indifference to health and safety; (2) subsequent deliberate indifference to Plaintiff's resulting serious medical needs; (3) equal protection violations; and (4) due process violations.  As Defendants, he named: John Doe No. 1, the warden of SQSP; John Doe No. 2, the associate warden of SQSP, John Doe No. 3, a SQSP correctional captain; John Doe No. 4, a SQSP correctional officer in ad seg; John Doe No. 5, the SQSP associate warden of health care services; John Doe No. 6, the SQSP chief medical officer; SQSP Lieutenant D. Graham; and SQSP Sergeant R. Harrison.

In its Order of Service dated September 1, 2009, the Court found cognizable claim of deliberate indifference to Plaintiff's health and safety against Defendants Harrison and Graham.  In the same Order, the Court dismissed with leave to amend Plaintiff's supervisory liability, deliberate indifference to serious medical needs, equal protection and due process claims.  Additionally, the Doe Defendants were terminated from this action without prejudice to Plaintiff filing an amendment to the complaint to add them as named defendants once he learned their identities.

In and Order dated December 4, 2009, the Court found that Plaintiff failed to correct the deficiencies of his supervisory liability, deliberate indifference to serious medical needs, equal protection and due process claims.  The Court dismissed the aforementioned claims without further leave to amend.

In their motion to dismiss, Defendants argue that the Court may not proceed to decide the

6

merits of Plaintiff's remaining claim of deliberate indifference to his health and safety because he had not appropriately exhausted all available administrative remedies.  Defendants argue that Plaintiff failed to assert his deliberate indifference claim in SQ-05-814 and SQ-05-1563 with the requisite level of factual specificity.

In his opposition, Plaintiff argues that his "CDCR 602s are clearly written, specific enough, and legally sufficient."  (Opp'n at 3.)  Plaintiff further concedes that he did not receive a decision at the Director's level for SQ-05-1563; however, he argues that he did in fact submit it to the second level of review.  (<u>Id.</u> at 11.)  In his declaration, he states:

> . . . on July 20, 2005, I submitted CDCR-602 SQ-05-1563 to the Appeals Coordinator for a Second Level Review.  However, CDCR-602 SQ-05-1563 was returned to me with no explanation given as to why it was returned.
>
> I resubmitted CDCR-602 SQ-05-1563 to the Appeals Coordinator for Second Level Review.  CDCR-602 was returned again with no explanation, nor was a new CDCR-602 screening form attached.

(Pl.'s Decl. at 4.)

## <u>DISCUSSION</u>

## I.    <u>Legal Standard</u>

The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding the conditions of their confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  <u>Porter</u>, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective."  <u>Id.</u> at 524; <u>Booth v. Churner</u>, 532 U.S. 731, 739-40 (2001).  Even when the prisoner seeks relief not available in grievance proceedings,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

notably money damages, exhaustion is a prerequisite to suit. <u>Booth</u>, 532 U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." <u>Id.</u> at 739.[1]

A prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. <u>Brown v. Valoff</u>, 422 F.3d 926, 934-35 (9th Cir. 2005); <u>Marella v. Terhune</u>, 568 F.3d 1024, 1028 (9th Cir. 2009).  As there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process.  <u>Brown</u>, 422 F.3d at 936-37.

The PLRA requires *proper* exhaustion of administrative remedies.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 83 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Id.</u> at 90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust.  <u>Id.</u>  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." <u>Id.</u> at 84.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007).  Where a prison's grievance procedures do not specify the requisite level of factual specificity required in the

---

[1]  That the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance.  <u>See</u> <u>Booth</u>, 532 U.S. at 737; <u>see also</u> <u>Porter</u>, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

8

grievance, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).  The grievance need not include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved.  Id.  Nor must a grievance include every fact necessary to prove each element of an eventual legal claim.  Id.  The purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.  Id.

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides them the right to file appeals alleging misconduct by correctional officers and officials.  Id. § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal:  (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the CDCR.  Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a).  Id. at 1237-38.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  However, a complaint may be dismissed by the court for failure to exhaust if a prisoner "conce[des] to nonexhaustion" and "no exception to exhaustion applies."  Id. at 1120.

## II.   Analysis

### A.   Specificity

Defendants argue that Plaintiff failed to properly exhaust his administrative remedies prior to the filing of his complaint, as mandated by § 1997e(a).  First, they contend that Plaintiff's attempts to exhaust are deficient because the specific conduct alleged by Plaintiff differs from the conduct at

United States District Court

For the Northern District of California

issue in both of his administrative complaints.  Second, with regard to SQ-05-1563, Defendants argue that Plaintiff's administrative remedy is incomplete because the record includes no final decision at either the second formal level or the Director's level of review.  In response, Plaintiff contends that the wording of his administrative appeals make it clear that he is addressing the same underlying conduct alleged in his civil complaint.  Furthermore, he argues that he was prevented from fully exhausting his claims through no fault of his own.

As an initial matter, the Court is unpersuaded by Defendants' contention that Plaintiff failed to assert his deliberate indifference claim in SQ-05-814 and SQ-05-1563 with the requisite level of factual specificity.  The standard for exhaustion set forth in Griffin does not require that the legal claim and the administrative grievance be identically worded. 557 F.3d at 1120.  Rather, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  Id. (quoting Strong, 297 F.3d at 650).  Plaintiff's grievances in both SQ-05-814 and SQ-05-1563 meet that standard.  On June 10, 2005, Plaintiff submitted SQ-05-814 for review at the second formal level and indicated that he personally had suffered serious injury due to having shoes that were too large for him.  Similarly, on May 6, 2005, Plaintiff submitted SQ-05-1563 for the informal level of review and indicated that he had complained for months about not having the right shoe size, that prison officials had ignored those complaints, and that he suffered serious injury as a result of falling.  Both SQ-05-814 and SQ-05-1563 provided the prison with sufficient notice as to the nature of the wrong at issue in Plaintiff's deliberate indifference claim.  Both grievances clearly allege the fact that his serious injuries were caused by Defendants' failure to provide proper fitting shoes.  (Opp'n Ex. A at 4.)

**B.      Failure to Exhaust at the Director's Level**

The fact that Plaintiff appealed with factual specificity does not defeat Defendants' motion to dismiss because, in both SQ-05-814  and SQ-05-1563, Plaintiff failed to present his deliberate indifference claim for review at the Director's level.

Regarding SQ-05-814, Defendant Graham granted Plaintiff's grievance relating to the issue of the prisoners' shoes at the first formal level of review.  In response to this grant, Plaintiff asserted that he possessed the shoes with his correct shoe size, and that the issue of the prisoners' shoes was no

10

United States District Court

For the Northern District of California

1   longer at issue in his appeal.  When Plaintiff submitted SQ-05-814 for review at the second formal

2   level, he simply recounted the incident where he fell down the stairs.  Warden Stokes referred back to

3   Defendant Graham's aforementioned grant at the first formal level of review.  Plaintiff subsequently

4   abandoned the issue of the prisoners' shoes, and, thus, he did not exhaust his deliberate indifference

5   claim because he failed to present it to the Director's level.  Furthermore, Plaintiff does not make an

6   argument to excuse his failure to exhaust his deliberate indifference claim in SQ-05-814.

7        Regarding SQ-05-1563, Plaintiff's grievance relating to the issue of the prisoners' shoes was

8   granted at the first formal level of review due to a concurrent change in prison policy which allowed

9   personal shoes to inmates who were placed in ad seg.  Later, Plaintiff, asserting dissatisfaction with

10  the remedies provided in that grant, submitted SQ-05-1563 for review at the Director's level.

11  However, that appeal was screened out because Plaintiff failed to first submit it for review at the

12  second formal level.  As discussed above, Plaintiff argues that he actually submitted SQ-05-1563 for

13  review at the second formal level on two separate occasions.  Thus, Plaintiff asserts that he was

14  improperly screened from exhausting his appeals through the appropriate channels.  (Opp'n at 7.)

15  However, despite Plaintiff's claims to the contrary, there is no record of any appeal to the second

16  formal level of review.  (Decl. Grannis, Ex. A.)

17

18       Meanwhile, Defendants contend that Plaintiff never submitted SQ-05-1563 for review at the

19  second formal level.  They have supported their contention by submitting evidence showing that no

20  such appeal was ever submitted to the second level of review, including a copy of SQ-05-1563 as

21  well as the declaration of the Chief of the Inmate Appeals Branch.  (Decl. Young, Ex. C at 17-18;

22  Decl. Grannis at 3.)  The evidence shows that the appeal form in SQ-05-1563 was not completed at

23  the second level of review, and that on August 3, 2005, SQ-05-1563 was screened out with the reason

24  that it "must be completed through 2nd level."  (Id.)  As mentioned above, compliance with SQSP's

25  prison grievance procedures is required by the PLRA for Plaintiff to properly exhaust.  Woodford,

26  548 U.S. at 90-91.  Because Plaintiff did not receive a final decision from the Director's level of

27  review in SQ-05-1563, he failed to satisfy the exhaustion requirement under § 1997e(a).  Barry, 985

28

11

1   F. Supp. at 1237-38.

2        **C.    Failure to Exhaust "Available" Administrative Remedies**

3        However, even if Plaintiff did not receive a decision at the Director's level for his grievance

4   relating to the issue of the prisoners' shoes, he contends that "he exhausted his *available*

5   administrative remedies" when SQ-05-814 and SQ-05-1563 were granted as to that particular

6   grievance.  (Opp'n at 12.)  The Court disagrees.

7        First, under Brown, the fact that both SQ-05-814 and SQ-05-1563 were granted as to the

8   grievance relating to the issue of the prisoners' shoes (both at the first formal level of review) does

9   not excuse Plaintiff's failure further to exhaust those grievances.  According to both Brown and

10  Booth, if some relief, even if it is solely monetary, remains available, then the failure to exhaust is not

11  excused and the complaint should be dismissed.  Brown, 422 F.3d at 934-35; Booth, 532 U.S. at 741.

12  Here, on July 12, 2005, one day after the partial grant of SQ-05-814 and on the precise day SQ-05-

13  1563 was granted, Plaintiff expressed his desire for further relief and dissatisfaction with current

14  remedies.  (Opp'n at 10-11.)   However, Plaintiff abandoned his grievance relating to the issue of the

15  prisoners' shoes in SQ-05-814, and he failed to present such a grievance for review at the Director's

16  level in SQ-05-1563.  Therefore, Plaintiff's deliberate indifference claim should be dismissed as

17  unexhausted, unless Plaintiff can prove that his failure to exhaust was due to his being reliably

18  informed that no more remedies were available, or that he lacked opportunity or ability to properly

19  exhaust.  See Brown, 422 F.3d at 934-35; Marella, 568 F.3d at 1027.

20

21       Plaintiff seems to argue that he was not allowed to present his grievance relating to the issue

22  of the prisoners' shoes for review at the Director's level through no fault of his own.  The Court finds

23  the Ninth Circuit's decision in Marella instructive.  In that case, plaintiff Marella's administrative

24  grievance was denied at the initial stage as untimely because it was filed thirty-three days after the

25  incident.  568 F.3d at 1026.  The screening form Marella received after the denial included the

26  following language: "[t]his screening action may not be appealed unless you allege the above reason

27  is inaccurate."  Id. at 1027.  Marella acknowledged that the grievance was untimely; therefore, he

28  lacked any grounds for appeal.  Id.  However, Marella argued that during the period in which his

grievance would have been timely that he had been hospitalized and was segregated.  Id. at 1026.  As

12

a result, Marella claimed that he lacked both access to the appropriate forms and knowledge of the procedural requirements.  Id.  The district court dismissed for failure to exhaust.  However, the Ninth Circuit reversed and remanded the action.  The court noted that "if the district court finds that [Marella] had the opportunity and ability to file his initial grievance timely, but failed to do so, his case should be dismissed."  Id. at 1028.  The Marella court cautioned against rigidly applying the requirements of proper exhaustion, or finding "no exceptions to the timely filing requirement exist." Id. at 1027.

The circumstances presented in this case are distinguishable from Marella.  Unlike Marella, the record in this case demonstrates that Plaintiff had the opportunity and ability to properly exhaust, but failed to do so.  In SQ-05-814, the fact that Plaintiff properly exhausted his other grievances (excluding the grievance relating to the issue of the prisoners' shoes, which he abandoned) indicates that he knew how to properly pursue the claims in his 602 appeal, but that he chose not to pursue his deliberate indifference claim.  (Decl. Grannis at 3.)  In SQ-05-1563, rather than following the proper procedure, Plaintiff opted to bypass the second level of review by appealing directly to the Director's level.  (Id., Ex. A.)  As a result, this appeal was screened out at the Director's level for failure to properly exhaust through the second formal level of review.  (Id.)  But instead of submitting SQ-05-1563 to the second level of review as directed, Plaintiff chose to proceed straight to federal court.

Unlike Marella, Plaintiff never received a screening form containing language that "[t]his screening action may not be appealed unless you allege the above reason is inaccurate[.]"  In SQ-05-814, Plaintiff knew he could have proceeded to the higher levels of review as to his deliberate indifference claim, but chose not to.  Similarly, Plaintiff was instructed to submit SQ-05-1563 for review at the second level review prior to pursuing it at the Director's level of review; however, the record shows that he did not do so.  While Plaintiff claims that he submitted SQ-05-1563 twice for review at the second level, he fails to support his claim.  Furthermore, the evidence before the Court proves otherwise.  Plaintiff was aware of the correct procedure of submitting an appeal for review at the second level because he successfully did just that when he pursued his other claims in SQ-05-814. This fact further distinguished the instant action from Marella in that Plaintiff demonstrated his knowledge of and access to the proper administrative appeal forms and procedures.  Therefore, the

Court finds unavailing Plaintiff's argument that he was not allowed to exhaust his grievances through the Director's level of review through no fault of his own.  It is clear that Plaintiff had the opportunity and ability to properly exhaust, but failed to do so.  <u>Marella</u>, 568 F.3d at 1028.

In sum, <u>Woodford</u> makes clear that a prisoner must complete the administrative review process in accordance with the applicable procedural rules as a precondition to bringing suit in federal court.  548 U.S. at 83-83.  Plaintiff failed to exhaust both SQ-05-814 and SQ-05-1563 despite the fact that he was dissatisfied with the grants and sought further, available relief.  Regarding SQ-05-814, Plaintiff deliberately abandoned his claim by failing to pursue it by stating that the issue of the prisoners' shoes was no longer at issue in his appeal after it was granted at the first formal level of review.  Meanwhile in SQ-05-1563, Plaintiff failed to follow the proper course of appeal in violation of the prison's procedural rules for filing grievances by attempting to bypass the second level of review.  Plaintiff has failed to exhaust his administrative remedies; thus, his deliberate indifference claim is DISMISSED as unexhausted.  Accordingly, the Court GRANTS Defendants' motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (docket no. 26) is GRANTED. Plaintiff's remaining deliberate indifference claim is DISMISSED without prejudice to refiling after exhausting California's prison administrative process.  <u>See</u> <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  The Court has rendered its final decision on this matter; therefore, this Order TERMINATES Plaintiff's case.  The Clerk of the Court shall terminate all pending motions and close the file.

This Order terminates Docket no. 26.

IT IS SO ORDERED.

DATED:  March 30, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JAMES WILLIAM COVERT,

        Plaintiff,

   v.

D. GRAHAM et al,

        Defendant.
_____/

Case Number: CV06-06626 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 31, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

James W. Covert D-86333
Pleasant Valley State Prison
P.O. Box 8503
Coalinga, CA 93210

Dated: March 31, 2010

                         Richard W. Wieking, Clerk
                         By: LISA R CLARK, Deputy Clerk

United States District Court
For the Northern District of California