1

2

3              UNITED STATES DISTRICT COURT

4          FOR THE NORTHERN DISTRICT OF CALIFORNIA

5                    OAKLAND DIVISION

6

7  JAMES W. COVERT,                          Case No:  C 06-6626 SBA (pr)

8          Plaintiff,                        **ORDER GRANTING
                                             DEFENDANTS' MOTION TO
9      vs.                                   DISMISS**

10 R. GRAHAM, et al.,                        Dkt. 50

11         Defendants.

12

13

14       Plaintiff James Covert, a California prisoner now incarcerated at High Desert State

15 Prison, brings the instant action under 42 U.S.C. § 1983 against prison officials at San

16 Quentin State Prison (SQSP), where he was previously housed.  The Amended Complaint

17 alleges that Defendants, Sgt. Harrison and Lt. Graham, were deliberately indifferent to

18 Plaintiff's health and safety following their alleged failure to provide him with properly

19 fitting shoes while he was in administrative segregation.  Plaintiff alleges that the ill-fitting

20 shoes caused him to trip and fall down a flight of stairs and injure himself.

21       The parties are presently before the Court on Defendants' Motion to Dismiss,

22 pursuant to Federal Rule of Civil Procedure 12(h).  Dkt. 50.  The gravamen of Defendants'

23 motion is that Plaintiff failed to exhaust his administrative remedies under the Prison

24 Litigation Reform Act of 1995 ("PLRA").  Having read and considered the papers filed in

25 connection with this matter and being fully informed, the Court hereby GRANTS the

26 motion for the reasons set forth below.  The Court, in its discretion, finds this matter

27 suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ.

28 L.R. 7-1(b).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.      **BACKGROUND**

      A.      **OVERVIEW**

In January 2005, Plaintiff was placed in administrative segregation in Carson Block at San Quentin.  Am. Compl. ¶ 17, Dkt. 14.  Upon his arrival there, Plaintiff was given the choice of either size 8 or size 12 shoes, even though he wears a size 9 1/2.  Id.  Plaintiff alleges that "for months" he complained, without success, to tier officers Sgt. Harrison and Lt. Graham that his shoes were too big.  Id.

On April 16, 2005, Plaintiff was walking to the showers when his right shoe slipped off.  Id.  He then stepped on the shoe, which caused him to twist his ankle and fall down the stairs.  Id.  On October 24, 2006, Plaintiff filed suit in this Court against Sgt. Harrison and Lt. Graham, alleging that they were deliberately indifferent to his safety as a result of their alleged failure to ensure that Plaintiff was given properly fitting shoes.  Both before and after the fall on April 16, 2005, Plaintiff filed two overlapping administrative grievances relating to the matter of the shoes sizes available to inmates in administrative segregation.

As a prerequisite to filing a civil rights lawsuit under the PLRA, a prisoner must first exhaust available administrative remedies.  Booth v. Churner, 532 U.S. 731, 736 (2001) (citing 42 U.S.C. § 1997e(a)).  "The California Department of Corrections [and Rehabilitation] provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment:  [1] an informal level, [2] a first formal level, [3] a second formal level, and [4] the Director's level."  Vaden v. Summerhill, 449 F.3d at 1048-49 (9th Cir. 2006); see Cal. Code Regs. tit. 15, § 3084.5 (2005).  The issue presented herein is whether Plaintiff fully exhausted his claim that Defendants' failure to provide him proper fitting shoes led to his fall.  A summary of Plaintiff's two, overlapping grievances is set forth below.

**B.** **SUMMARY OF GRIEVANCES**

**1.** **No. SQ-05-814**

*a)* *Informal Level Review*

On April 4, 2005, before the accident mentioned above, Plaintiff submitted inmate

Grievance No. SQ-05-814 ("SQ-05-814"), which he styled as a "class action appeal about

'conditions of confinement' in 'the hole' . . . ." Brady Decl. Ex. A, Dkt. 58-3.  The

grievance set forth fourteen separate issues, such as sanitation problems, the lack of stamps

and paper, the lack of warm food, among other concerns.  Issue no. 8 pertained to the

matter of shoes, stating:  "Prisoners aren't allowed their personal shoes, and are forced to

wear either a size 8, or, size 12 pair of shoes."  Id. at 3.

On April 9, 2005, Defendant Harrison responded to Plaintiff's informal grievance

and the numerous issues contained therein.  With respect to Plaintiff's complaint regarding

his shoes, Defendant Harrison stated:  "While you are housed in ad seg [administrative

segregation] you cannot have your personal shoes."  Boerum Decl. Ex. B at AG-11, 16,

Dkt. 51-2.

*b)* *First Level Review*

Upon receiving Defendant Harrison's response, Plaintiff sought review at the first

formal level on April 9, 2005.  Id. at AG 11.  On May 13, 2005, Defendant Graham issued

a lengthy memorandum indicating that he had interviewed Plaintiff on that date regarding

the fourteen issues initially presented in his informal grievance.  Id. at AG-07.  With respect

to Plaintiff's shoe claim, Defendant Graham stated as follows:

> In his appeal, Inmate Covert stated prisoners aren't allowed
> their personal shoes and are forced to wear either a size 8 or a
> size 12 pair of shoes.  I explain [sic] to Covert, for security
> reasons, inmates housed in Ad/Seg are not allowed to have their
> personal shoes.  I told Covert that his personal shoes would be
> held in his "hot" property and they would be returned to him
> upon his release from Ad/Seg.  I informed Covert [that] staff
> make every attempt to get the correct size soft sole shoes for
> inmates when they arrive in Ad/Seg.  If the correct size cannot
> be found, then a substitute size is issued that the inmate is able
> to wear.  Inmate Covert said during the interview that he now
> has the correct size shoe and this is no longer an issue in his
> appeal.

1    Id. at AG-08, AG-09.

2                        *c)      Second Level Review*

3            Dissatisfied with Defendant Graham's response, Plaintiff submitted a request for

4    second level review on June 10, 2005, in which he reiterated his litany of complaints.  Id. at

5    AG-12.  With regard to the shoe issue, he alleged that:

6                        This is a serious health & safety issue that needs to be resolved.
                         As I, personally, because of shoe 3 sizes too big, fell down the
7                        stairs seriously injuring myself and still have not recovered.  It
                         took me over 3 months to finally find a prisoner that was
8                        paroling that agreed to trade me shoes.  Unfortunately, for me,
                         the damage has been done. But, hopefully another Prisoner can
9                        be spared the trauma.

10   Id.  On July 11, 2005, the Warden issued a Second Level Appeal Response.  Id. at AG-04.

11   He found that Plaintiff's complaints, including his shoe issue, were adequately addressed

12   following the interview conducted by Defendant Graham on May 13, 2005.  Id. at AG-05.

13                       *d)      Director's Level Review*

14           On July 21, 2005, Plaintiff appealed to the director's level, which is the final level of

15   administrative review.  Brady Decl. Ex. A ¶ H, Dkt. 58-3.  Plaintiff acknowledged that

16   "[a]ll of these issues were . . . addressed at the first level by staff," but that other issues

17   affecting the "conditions of confinement . . . have become worse."  Id.  He noted, however,

18   that new razors had been provided and that the "the policy regarding personal shoes" had

19   been changed since his commencement of the appeals process.  Id.  On October 11, 2005,

20   N. Grannis, Chief of the Inmate Appeals Branch, found that Plaintiff's "specific

21   complaints" had been addressed and that no further relief would be afforded.  Boerum Decl.

22   Ex. B at AG-02, AG-03.

23                       **2.      No. SQ-05-1563**

24                       *a)      Informal Level Review*

25           On May 6, 2005, during the pendency of his first grievance, but after the accident

26   had occurred, Plaintiff filed a second grievance, Grievance No. SQ-05-1563 ("SQ-05-

27   1563").  Brady Decl. Ex. B, Dkt. 58-4.  In his new grievance, Plaintiff alleged that on April

28   16, 2005, he fell down a flight of stairs due to the wrong shoe size having been given to

1   him.  Id.  As relief, Plaintiff requested as follows: "That Prisoners be allowed to wear their

2   personal tennis shoes until proper fitting shoes can be obtained.  [sic] And that necessary

3   steps be taken to insure [sic] that no other Prisoners['] health and safety be put in jeopardy

4   by the dangerous conditions that currently exist."  Id.

5          On May 20, 2005, Defendant Harrison issued an informal level response, which

6   stated that he had interviewed Plaintiff in connection with his other appeal, and that he

7   confirmed that he now had "the right shoe size."  Id.  In addition, Defendant Harrison stated

8   that inmates "can have their own shoes if there are no other shoes available."  Id.

9                    b)        *First Level of Review*

10         On May 31, 2005, Plaintiff sought first level review.  Plaintiff reiterated that he had

11  complained about not having the correct shoe size, and that he was finally able to obtain the

12  correct size shoes because he traded shoes with another prisoner who was being paroled.

13  Boerum Dec. Ex. C at AG-17, AG-20.  Although able to "trade [his] shoes with another

14  prisoner who was paroling," Plaintiff complained that Prisoners are forced to walk down

15  stairs that are often slimy, dirty, with their arms handcuffed behind them with no help."  Id.

16         On June 1, 2005, the Appeals Coordinator's office screened out (rejected) Plaintiff's

17  first level appeal on the grounds that Plaintiff "failed to add any additional information to

18  submit [his] appeal for the formal level review."   Boerum Dec. Ex. C at AG-17, AG-20.

19         Plaintiff resubmitted his first formal level appeal on June 12, 2005.  Id. at AG-17.

20  He complained that the matter of slimy stairs had not been addressed at the informal level

21  and that "these dangerous conditions *still* exist."  Id. at AG-19.  He also complained about

22  inmates in administrative segregation not being allowed to wear their personal shoes, and

23  stated: "It is only a matter of time, before someone else is seriously injured falling down

24  these stairs.  That is what this appeal is trying to prevent."  Id.

25         On July 12, 2005, Lt. J. Reid granted Plaintiff's first level appeal, based on the May

26  23, 2005, memorandum by Associate Warden Petrakis.  That memorandum announced a

27  change in policy to allow prisoners to keep their personal shoes while in Ad Seg.  Id. at

28  AG-18, AG-22.

### c)      Second Level Review

Plaintiff submitted a request for second level review, dated July 17, 2005, which was stamped "rec'd" on July 19, 2005.  Brady Decl. Ex. B at 2.  The appeal, in its entirety, states as follows:

> The stairs which get slimy are still a safety issue for Prisoners having to walk down them with their hands behind their backs, with no help, whatsoever.  This issue has not been addressed yet in this appeal.  I raise this issue of slimy stairs in the [at] the informal level.

Id.  Plaintiff's request for second level review made no mention of any shoe-related issues. According to Plaintiff's attorney, this appeal was "returned without explanation."  Brady Decl. ¶ 8.[1]

### d)      Director Level Review

On July 23, 2005, Plaintiff filed for director's level review in which he claimed:

> I filed an appeal, Log No. 05-1563, and I complained about the stair being wet & slimy and having no assistance with our hands handcuffed behind our backs.  This issue was never addressed in my appeal and my appeal was returned by the appeals coordinator stating that I failed to add any additional information.  But there isn't any additional information to add. I would like to know what kind of additional information is required, because I don't know what is being asked, and I can't find the rule to try and understand this demand.

Brady Decl. Ex. C.  This appeal was stamped "rec'd" on July 26, 2005.  Id.  Plaintiff's Director's Level appeal was screened out on August 3, 2005, on the ground that the appeal was not completed through the second formal level of review.  Grannis Decl. ¶ 8 and Ex. A at 2.

---

[1] Ostensibly because his second level appeal made no mention of the shoe issue, Plaintiff now asserts, without citation to any authority, that the resubmission of his first level appeal on June 12, 2005, constitutes *another* second level appeal.  Pl.'s Opp'n at 4. This contention lacks merit.  A grievance that has been screened out has not been reviewed on the merits.  See Garcia v. Lamarque, No. C 09-02235 CW, 2011 WL 3516144, at *4 (N.D. Cal. Aug. 11, 2011).  Thus, prison staff construed Plaintiff's resubmission as a request for first level review, which was granted on July 12, 2005.  Boerum Decl. Ex. C at AG 18, AG 22.

**1**

### C.   PROCEDURAL HISTORY

**2**      Acting pro se, Plaintiff filed the instant action in this Court on October 24, 2006.  He

**3** filed an amended complaint on July 30, 2009.  Dkt. 14.  On September 1, 2009, the Court

**4** issued an Order of Service, finding that Plaintiff had stated cognizable claims for deliberate

**5** indifference to his safety as to Defendants Harrison and Graham "stemming from their

**6** failure to provide him with properly fitting shoes."  Dkt. 15 at 5.[2]

**7**      Defendants filed a motion to dismiss based on Plaintiff's failure to exhaust under the

**8** PLRA, which the Court granted on March 31, 2010.  Dkt. 26, 33.  Plaintiff appealed.  Dkt.

**9** 35.  On January 25, 2012, the court of appeal issued a Memorandum Decision reversing the

**10** dismissal based on the conclusion that "Defendants have not met their burden of proving

**11** that Covert's action should be dismissed for failure to exhaust administrative remedies."

**12** Id.   The court noted Plaintiff's claim that he had attempted to file appeals at the second

**13** level of review for his May 6, 2005 grievance, but that these appeals were never properly

**14** processed.  In addition, the court found that the declaration from the prison's appeals

**15** coordinator did not provide a sufficient foundation to explain the prison's record-keeping

**16** methods or otherwise address how attempted inmate appeals are tracked or handled.

**17**      On June 11, 2012, Defendants filed a renewed motion to dismiss.  Plaintiff, who

**18** now is represented by counsel, filed an opposition, and Defendants have filed a reply.  Dkt.

**19** 58, 61. On February 20, 2013, Plaintiff filed a surreply, as directed by the Court.  Dkt. 63.

**20** The motion is fully briefed and is ripe for adjudication.

**21** ## II.   LEGAL STANDARD

**22**      ### A.   RULE 12(B)

**23**      A motion to dismiss based on a prisoner's failure to exhaust administrative remedies

**24** is properly brought as an unenumerated Rule 12(b) motion.  Wyatt v. Terhune, 315 F.3d

**25**

**26**      [2] The Court dismissed Plaintiff's claims for supervisory liability, deliberate
indifference to serious medical needs and violation of due process, with leave to amend.
**27** Dkt. 15.  On December 4, 2009, the Court issued an order finding that Plaintiff's
amendments were insufficient and dismissed the aforementioned claims with prejudice.
**28** Dkt. 22.

**1**  1108, 1119 (9th Cir. 2003).  "In deciding a motion to dismiss for failure to exhaust non-

**2**  judicial remedies, the court may look beyond the pleadings and decide disputed issues of

**3**  fact."  Id. at 1119-20.  Where the court looks beyond the pleadings to a factual record,

**4**  which is "a procedure closely analogous to summary judgment," the court must assure that

**5**  the plaintiff has fair notice of his opportunity to develop the record.  Id. at 1120 n.14.

**6**  　　　B.　　EXHAUSTION UNDER THE PLRA

**7**  　　　The PLRA provides that "[n]o action shall be brought with respect to prison

**8**  conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in

**9**  any jail, prison, or other correctional facility until such administrative remedies as are

**10**  available are exhausted."  42 U.S.C.1997e(a).  The purposes of the PLRA's exhaustion

**11**  requirement are to: (1) "eliminate unwarranted federal court interference with the

**12**  administration of prisons;" (2) "afford corrections officials time and opportunity to address

**13**  complaints internally before allowing the initiation of a federal case;" and, (3) "reduce the

**14**  quantity and improve the quality of prisoner suits."  Woodford v. Ngo, 548 U.S. 81, 84-85,

**15**  (2006).

**16**  　　　The PLRA requires the inmate to exhaust every level in the administrative process.

**17**  See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).  Exhaustion is a prerequisite

**18**  to the inmate filing a lawsuit.  See Porter v. Nussle, 534 U.S. 516, 524 (2002).  The failure

**19**  to exhaust is an affirmative defense which defendants bear the burden of establishing.

**20**  Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  "Once the defense meets its burden,

**21**  the burden shifts to the plaintiff to show that the administrative remedies were unavailable."

**22**  Id.  Administrative remedies may be deemed "unavailable" where the inmate takes

**23**  reasonable steps to exhaust but is precluded from exhausting such claim due to a mistake

**24**  by prison staff.  Id.

**25**

**26**

**27**

**28**

1  III.   DISCUSSION

2       A.   **DEFENDANT'S INITIAL BURDEN OF SHOWING NON-EXHAUSTION**

3            1.   **Grievance No. SQ-05-814**

4       Defendants contend that Plaintiff's first grievance is insufficient to exhaust his

5  claims in this action.  The Court agrees.  In SQ-05-814, Plaintiff complained about fourteen

6  separate issues affecting all inmates placed in administrative segregation.  One of those

7  issues pertained to the prison's policy of providing only size 8 or size 12 shoes, and not

8  allowing inmates in administrative segregation to wear their personal shoes.  Plaintiff

9  alleged that this practice resulted in his being issued ill-fitting shoes, which, in turn, led to

10 his falling down a flight of stairs.  He requested that the "necessary steps be taken to

11 prevent these conditions of confinement from ever occurring again here at San Quentin."

12 Boerum Decl. Ex. B at AG 11.

13      San Quentin staff responded to Plaintiff's grievance at the informal level, but

14 Plaintiff was not satisfied and thereafter sought first level of review.  Boerum Decl. Ex. B

15 at AG-11.  At this level, staff responded to Plaintiff's multiple issues in greater depth.  With

16 regard to the shoe issue, staff explained San Quentin's policy was not to allow inmates in

17 administrative segregation to wear their personal shoes.  Id. at AG-09.  During the

18 interview for his first level review, Plaintiff told staff that he now had the correct size

19 footwear.  Id.  In his subsequent request for second level review, however, Plaintiff alleged

20 that the shoe policy was still at issue, and cited the incident where he fell down the stairs as

21 an example of the seriousness of the matter.  Id. at AG-12.  Nonetheless, in his final,

22 director's level appeal, Plaintiff expressed no continuing concern relating to shoes given to

23 inmates in administrative segregation.  Brady Decl. Ex. A ¶ H.

24      In his opposition, Plaintiff does not dispute that his director's level appeal request

25 did not express any issues or concerns relating to shoes.  Nonetheless, Plaintiff insists that

26 he did not expressly state in that request that the shoe problem had been resolved, and, in

27 fact, he had alleged that the conditions in administrative segregation had "worsened."  Pl.'s

28 Opp'n at 8.  Plaintiff mischaracterizes the record.  In actuality, Plaintiff stated that since

**1** initiating the grievance process, many of the conditions "have become worse . . . *with the*

**2** *exception of* the new razors, and *finally a change in the policy regarding personal shoes*."

**3** Brady Decl. Ex. A ¶ H (emphasis added).  In light of such statement, it is readily apparent

**4** that Plaintiff was no longer making any claim relating to the shoes issued to him while in

**5** administrative segregation.  Accordingly, the Court finds that Grievance SQ-05-814 is

**6** insufficient to exhaust Plaintiff's claims in this action.

**7** **2.      Grievance No. SQ-05-1563**

**8** The question remains whether Plaintiff's second grievance—SQ-05-1563—is

**9** sufficient to have administratively exhausted his deliberate indifference claim.  The parties

**10** dispute whether Plaintiff fully exhausted his shoe claim through the director's level.

**11** Plaintiff asserts that he properly sought second level review but that he never received a

**12** response, and therefore, he was compelled to seek review at the director's level.

**13** Defendants, on the other hand, contend that Plaintiff did not wait for a response to his

**14** request for second level review, and for that reason, Plaintiff's director's level appeal was

**15** appropriately screened out.

**16** Ultimately, the question of whether Plaintiff prematurely sought director's level

**17** review is inapposite because it is clear that Plaintiff did not exhaust his shoe issue at the

**18** second level or director's level.  In his second level appeal, dated July 17, 2005, Plaintiff

**19** only complained about the "slimy wet stairs" which "are still a safety issue for Prisoners

**20** having to walk down with their hands handcuffed behind their backs with no help

**21** whatsoever."  Brady Decl. Ex. B at 2.  Notably, Plaintiff made no mention of any ongoing

**22** concern with respect to the matter of the size of shoes issued to him or inmates in

**23** administrative segregation.  Id.  Similarly, in his director's level appeal, dated July 23,

**24** 2005, Plaintiff again complained only about the "wet & slimy" stairs, without any mention

**25** of his shoe issue.  Id. Ex. C.  Thus, irrespective of whether Defendants properly screened

**26** out Plaintiff's director's level appeal, the fact remains that neither the director's level or

**27** second level appeal pursued the shoe claim.  Thus, the Court finds that SQ-15-1563 is

**28**

1  insufficient to exhaust his present claim for deliberate indifference based on the failure to

2  provide Plaintiff with the correct size shoes.

3           **B.      PLAINTIFF'S EXCUSE FOR FAILING TO EXHAUST**

4           In view of the Court's determination that Defendants have met their initial burden of

5  showing the absence of exhaustion, "the burden shifts to [Plaintiff] to demonstrate the

6  grievance procedure was unavailable." Albino, 697 F.3d at 1031.  Here, Plaintiff argues

7  that, with respect to SQ-15-1563, he received no response to his two second level requests

8  for review, and therefore, was at a loss as to what information was required for prison staff

9  to consider his appeals.  Pl.'s Opp'n at 12.  This contention lacks merit.

10          As discussed, Plaintiff's contention that he submitted "two" second level appeals is

11  legally and factually unsupported.  Plaintiff's submission on January 12, 2005, was not a

12  second level appeal; rather, it was Plaintiff's attempt to rectify the deficiencies that led to

13  the initial screening out of his original *first level* appeal.  Based on the January 12th

14  resubmission, Lt. Reid subsequently granted Plaintiff's appeal at the first level on July 12,

15  2005.   Boerum Decl. Ex. C at AG-22.  More specifically, Lt. Reid's response indicates that

16  on January 12, 2005, he interviewed Plaintiff regarding his concern that inmates in

17  administrative segregation be allowed to wear their personal shoes.  Id.  Citing a May 23,

18  2005 memorandum by Associate Warden Petrakis changing the prison's shoe policy, Lt.

19  Reid granted Plaintiff's appeal.  Id.  Plaintiff expressed no other concern, aside from

20  requesting earplugs, which Lt. Reid provided.  Id.  Plaintiff does not dispute having met

21  with Lt. Reid on July 12, 2005, or having received Lt. Reid's response.  Indeed, Plaintiff's

22  opposition is tellingly devoid of any reference to Lt. Reid's July 12, 2005 response.

23          In Plaintiff's subsequent second level appeal submitted on July 17, 2005, Plaintiff

24  complained about the "slimy wet stairs," but notably omitted any complaints regarding

25  shoes.  Brady Decl. Ex. B ¶ F.  Plaintiff complains that he never received any response to

26  this particular request and therefore did not know what additional information was required

27  for his appeal.  But whether or not Plaintiff received a response is inapposite.  The fact

28  remains that Plaintiff abandoned any shoe issues by omitting them from his second level

1   appeal, which complained only about the stairs.  To the extent that there were any shoe-

2   related issues remaining following Lt. Reid's July 12th response to Plaintiff's resubmitted

3   request for first level review, it was incumbent on Plaintiff to raise those concerns in his

4   July 17th request for second level review.  Having failed to do so, Plaintiff cannot

5   legitimately complain that Defendants' alleged lack of response to the July 17th second

6   level appeal had any bearing on Plaintiff's omission of any shoe issues from that appeal or

7   his subsequent director's level appeal.

8   ## IV.    CONCLUSION

9          IT IS HEREBY ORDERED THAT:

10         1.      Defendants' motion to dismiss is GRANTED.

11         2.      The Clerk shall close the file and terminate any pending matters.

12         IT IS SO ORDERED.

13  Dated:  March 20, 2013                    _Saundra B Armstrong_
                                              SAUNDRA BROWN ARMSTRONG
14                                            United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26
    N:\Keith\Prisoner\06-6626 - Covert - Order Granting Motion to Dismiss - Exh.docx
27

28